IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| JEFFREY L. & ELISHA A. DAINES, <br> JEFFREY R. & STEPHANIE M. FEDERWITZ, <br> SOLID GROUND INC., <br> SOLID GROUND TRANSPORTATION, INC., <br> SOLID GROUND TRANSPORTATION, INC. <br> EMPLOYEE STOCK OWNERSHIP PLAN <br><br> Plaintiffs, <br><br> INTERNAL REVENUE SERVICE, <br><br> Defendant. | CASE NO.: <br><br> JUDGE: <br><br> **COMPLAINT** <br><br> Jury Demand |

Now come Plaintiffs Jeffrey L. & Elisha A. Daines, Jeffrey R. & Stephanie M. Federwitz, Solid Ground Inc., Solid Ground Transportation, Inc., Solid Ground Transportation, Inc. Employee Stock Ownership Plan (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby allege and state as follows:

## **PARTIES**

1. Jeffrey L. & Elisha A. Daines ("Daines") are married individuals with mailing address 424 Red Deer Road, Franktown, Colorado, 80116.

2. Jeffrey R. & Stephanie M. Federwitz ("Federwitz") are married individuals with mailing address W. 5088 Schaefer Road, Menasha, Wisconsin, 54952.

3. Solid Ground Inc. ("SGI") is a valid and effective S-Corporation with mailing address 4740 W. Packard Street, Appleton, Wisconsin, 54913

4. Solid Ground Transportation, Inc. ("SGTI") is a valid and effective S-Corporation with mailing address 4740 W. Packard Street, Appleton, Wisconsin, 54913.

5. Solid Ground Transportation, Inc. Employee Stock Ownership Plan (the "Plan") is a duly qualified retirement plan with mailing address 4740 W. Packard Street, Appleton,

Wisconsin, 54913.

6. Defendant Internal Revenue Service ("IRS" or "Defendant") is a bureau of the Treasury Department and an administrative agency of the United States of America.

## JURISDICTION & VENUE

7. Plaintiffs bring this action pursuant to the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 551-559, 701-706.

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2); 1391(e)(1).

10. A substantial part, if not all, of the events giving rise to Plaintiffs' claim occurred in this District.

## BRIEF SUMMARY

11. Plaintiffs bring the instant suit to enjoin Defendant, which has exceeded its authority by adding additional reporting requirements, monetary penalties, and criminal sanctions upon taxpayers if their employee stock ownership plans ("ESOPs"), affiliates, and Plan trustees do not comply with such reporting requirements, herein referred to as the Byers Rule (the "Byers Rule").

12. Alternatively, this is a pre-enforcement suit to vacate the Byers Rule as Plaintiffs' tax years are still open in the event defendant (through its SBSE and TEGE offices) initiates an audit concluding Byers-rule additional requirements were necessary.

13. Plaintiffs are neither attempting to restrain Defendant's ability to tax nor Defendants' collection efforts.

14. Plaintiffs have no adequate remedy at law.

# BACKGROUND FACTS

## Byers

15. Lex J. Byers ("Byers") founded IFL Capital Group, a company in Arizona, in 2000.

16. IFL Capital Group was the holding company for proprietary ESOP documentation used by Byers to implement Plaintiffs' Plan.

17. In or around early 2009, Byers partnered with marketing financial professionals located in Colorado Springs, Colorado.

18. Byers marketed the proprietary ESOP and corporate documents that comprise the "Byers Proprietary ESOP system" to Plaintiffs.

19. In 2012, Plaintiffs hired Byers to provide Plaintiffs with guidance for the various and complicated tax issues involved with the Employee Retirement Security Act of 1974 ("ERISA").

20. Since 1998, Byers formed more than 179 S-ESOPs using the Byers Proprietary ESOP System, which used documents pre-approved by the IRS as compliant with ERISA.

21. Since 1998, when Congress approved S-Corporations to be owned by ESOP's, Byers' clients had received agency decisions indicating that the respective plans had been approved. A true and correct copy of Defendant's approval letter (known as agency actions) for Byers' clients from 20013 thru June 2016 is annexed hereto as Exhibit 1.

22. Byers' clients received these approval letters beginning after 1998 and up until June 2016.

### Solid Ground Transportation, Inc.

23. Following the Great Recession in 2008, which devastated the average worker's retirement account, Plaintiffs began their efforts of establishing an S-ESOP to not only fill the void in retirement benefits for SGI and SGTI employees but also retain and recruit employees.

24. In 2010, Daines incorporated SGTI, electing S-Corporation status effective October 1, 2013, in accordance with subchapter S of the Internal Revenue Code of 1986, as amended.

25. On October 1, 2013, Defendant accepted SGTI as a valid S-Corporation.

26. SGTI adopted the Plan in accordance with IRC §§ 401(a), 501(a).

27. To adopt the Plan, Byers provided the Byers Proprietary ESOP System for Plaintiffs to use.

28. Since the Plan's adoption, the Plan was in effect with SGTI always acting as sponsor of the Plan.

29. Since the 2013 tax year, SGI has paid the annual mandatory administrative and management benefit fees to SGTI pursuant to IRC §§ 162, 4975, and the administrative agreement.

30. After the Plan's adoption in 2013, Daines was nominated as Trustee of the Plan by SGI and SGTI corporate board members.

31. The Plan qualifies under IRC §§ 401(a) and 501(a), as well as 5 U.S.C. § 4975, in form, in effect, and in operation.

32. On January 1, 2015, the Plan was subsequently amended and restated.

33. In response to costly ongoing litigation with Defendant, the additional requirements imposed by Defendant, the potential for noncompliance monetary and criminal penalties, SGTI was forced to wind down the Plan on December 31, 2022.

### Prior Acceptance of Retirement Plan Transaction

34. Before September 2016, Defendant accepted the retirement plan transaction – which Plaintiffs used – as valid and compliant. See Ex. 1.

35. Indeed, since Congress amended IRC § 1361(c) in 1998, which allowed the use of ESOPs for S-Corporations, Defendant has consistently found that retirement plan transactions such as Plaintiffs were valid.

36. Congress has neither changed the law nor has Defendant issued any regulatory guidance to change well-established ERISA and retirement plan laws.

37. Before the Fall 2016, Plaintiffs' Plan, and similarly situated S-ESOP, was never identified as a listed transaction nor a transaction of interest pursuant to Treasury Regulation § 1.6011-4(b)(2).

38. Defendant has removed established requirements from its website, thereby confusing Plaintiffs and similarly situated taxpayers.

### The Byers Investigation

39. In May 2016, a disgruntled former client of Byers provided falsified information to the American government, which prompted a subsequent investigation into Byers (the "Byers Investigation").

40. On May 16, 2016, the Byers Investigation began. A true and correct copy of Defendant's referral dated May 11, 2016 to the LDC (Lead Development Center)/Office of Tax Promoter is attached hereto as Exhibit 2.

41. Defendant's Office of Tax Promoter was directed by Joseph Conroy.

42. In September 2019, counsel for Plaintiff, met with Joseph Conroy while Defendant was auditing Byers' first client after the tax promoter office referral, who is a similarly situated taxpayer.[1]

43. Defendant created the Byers Rule, which imposed costly additional requirements upon taxpayers, such as Plaintiffs, who hired Byers to form Plaintiffs' Plan.

44. The Byers Rule, and its additional requirements were, not imposed before September 2016.

45. The Byers Rule originates from the ongoing Byers Investigation and exceeds Defendant's authority, given its secretive nature and Defendant's failure to allow for public scrutiny.

46. The Byers Rule (promulgated in secret) is confirmed by Defendant's letter in response to Plaintiffs' June 2023 FOIA request. A true and correct copy of Defendant's final response to a Freedom of Information Act request is attached hereto as Exhibit 3.

47. Indeed, after the Byers Investigation began, Defendant began auditing former clients of Byers using the Byers Rule to disqualify legitimate retirement plans. A true and correct copy of Defendant's report, admitting to the ongoing Byers Investigation, is annexed hereto as Exhibit 4.

---

[1] Defendant's first targeted audit of a former Byers' client began in August 2017 against Adminicor Services, Inc. and its affiliates. Adminicor Services Inc.'s cases remain pending before the United States Tax Court. See USTC Docket Nos. 14876-21; 14944-21; 14945-21; 37957-21; and 37958-21.

48. Defendant was able to easily identify and audit Byers' former clients because Defendant required Byers to maintain a list of clients which is a requirement under defendant's listed transaction rules. Notwithstanding, Plaintiff's plan was never a listed transaction.

## The Byers Rule

49. The Byers Rule created a <u>de facto</u> rule requiring same or substantially similar to "listed transactions" under Treas. Reg. § 1.6011-4(b)(2), which amount to violations of the APA. 5 U.S.C. §§ 551-559, 701-706.

50. The Byers Rule has ". . . general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4).

51. The Byers Rule imposed additional reporting obligations that were not otherwise required, including but not limited to:

　i. Adding requirement that independent appraisers must meet the requirements of IRC and Treasury Regulations 1.170(a)(1), 1.170A-(13)(c)(5)(iv), 1.170(f)(11)(E) and any related regulations prescribed by the Secretary, precluding any party to the transaction who implemented Plaintiff's plan (such as Byers who was Plaintiff's appraiser) when the property being appraised was acquired.

　ii. Adding a requirement that non-cash contributions (such as Plaintiff's 2013 stock sale to Plaintiff's ESOP) under 1.170A-13(c)(5)(iv) is interpreted as a 'donor of property' rather than a sale of stock thereby necessitating additional requirements for valuation/appraisal purposes such as hiring a new appraiser that was otherwise qualified.

　iii. Adding a requirement that taxpayer's appraiser provide sensitive and confidential

information such as an EIN allegedly required under 1.170A-17(a)(3)(iv) which is intended for Conservation Easements and not an allowable requirement given Congress has not authorized defendant to force taxpayer's appraisers to reveal sensitive EIN information on the annual appraisal. Defendant has never required such information and now (through defendant's secretive Byers-Rule) requires such information with monetary and criminal penalties for noncompliance.

iv. Adding requirements that plaintiff file tax form 1041 which has never been necessary prior to 2016. Such noncompliance may result in monetary penalties and criminal penalties per 6707A and punishable up to 1 year in prison and a $100,000 fine. See 26 C.F.R. 7203

v. Adding requirements under IRC 409(h) that principal loan payments are necessary when that requirement violates fiduciary duty of prudence, and corresponding Treasury Regulation 1.409(h), known as the repurchase obligation, which increased costs to ensure completion of the retirement plan;

vi. Eliminating requirements for affiliated service group rules including but not limited to IRC § 414;

vii. Adding requirements under IRC § 401(a) and 54.4975 for who can allocate stock; and

viii. Requiring the plan sponsor to pay off an exempt ESOP loan within one year of adoption thereby adding requirements not otherwise found prior to 2016.

52. Accordingly, Plaintiffs submit that the Byers Rule is unlawful, for the following reasons:

i. ***First***, the IRS unlawfully disqualified the Plan and added reporting requirements in reliance upon the Byers Rule, which amounts to a legislative-type rule, without complying with the mandatory notice-and-comment provisions of the APA. 5 U.S.C. § 553.

ii. ***Second***, the Byers Rule is arbitrary, capricious, and *ultra vires* in nature, lacking the underlying authority required by the APA. 5 U.S.C. § 706(2)(A)).

iii. ***Third***, the Byers Rule failed to comply with the APA's notice-and-comment requirements. Indeed, the Byers Rule was created in secret, imposing additional costs separate from the permissible statutory tax penalties upon Plaintiffs and similarly situated taxpayers, and cannot serve as the basis for imposing such additional reporting requirements and costs.

iv. ***Fourth,*** the Byers Rule deprived Plaintiffs – as well as other similarly situated taxpayers – the opportunity to file any pre-enforcement action. Plaintiffs submit that they had no knowledge about any proposed or enacted rule changes until Defendant issued notices to Plaintiffs in 2022.

v. ***Fifth***, Defendant intentionally targeted Byers' former clients to impose additional requirements previously not found before 2016.

vi. ***Sixth***, Defendant failed to submit Appropriation Reports to Congress within 30 days of receiving funding, as required, to detail use of Defendant's Office of Tax Promoter Investigations and related investigations to allow the public to scrutinize law and rule changes.

**<u>Defendant's Notices Sent to Plaintiffs</u>**

53. Defendant sent Daines a Notice of Deficiency, dated April 18, 2022, imposing a

tax assessment in the amount of $183,816.40 under IRC § 6662(e) and, alternatively, IRC § 6662(c), claiming that the loans from Solid Ground Transportation, Inc. would be considered taxable income because they did not constitute bona fide loans.

54. Defendant sent Federwitz a Notice of Deficiency, dated April 18, 2022, imposing a tax assessment in the amount of $15,186.80 under IRC § 6662(d), or alternatively, IRC § 6662(c), claiming that an adjustment of Federwitz's return was necessary pursuant to the results of the S-Corporation return for Solid Ground, Inc., for which Federwitz is a shareholder. The IRS also claimed that Federwitz's distributive share of the partnership income for Fox Valley LLC required an adjustment.

55. On March 6, 2023, the IRS mailed a final Non-Qualification Letter to Solid Ground Transportation, Inc., determining that the Plan is not a qualified plan for under section 401(a) of the IRC for plan years ending December 31, 2018, and subsequent plan years.

56. Without immediate judicial review of the Byers Rule, participants will be unable to access benefits through the S-ESOP retirement plan, imposing unnecessary financial and business hardships caused by the newly created requirements not found prior to 2016.

**Pending Tax Court Petitions**

57. In response to their respective Notices of Deficiency, Daines and Federwitz filed respective Petitions in the United States Tax Court. See Dkt. No. 18235-22.

58. Similarly, in response to the notice, SGTI filed a Petition for Declaratory Judgment in the United States Tax Court. See Dkt. Nos. 19604-22R; 8843-23R.

59. Plaintiffs' respective Petitions before the United States Tax Court are inadequate considering the United States Tax Court does not contemplate a jury demand, Defendant denies the existence of Plaintiffs' APA claims, the US Tax Court doesn't allow for Plaintiff's ability to

add exhibits and records related to these claims and the United States Tax Court is a court of limited jurisdiction.

60. Defendant could still audit Plaintiffs' tax years 2021-2023. Accordingly, Plaintiffs' Complaint is also a pre-enforcement action for those tax years.

## COUNT 1
## FAILURE TO PROVIDE NOTICE AND OPPORTUNITY FOR COMMENT IN VIOLATION OF THE APA

61. Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

62. Defendant is an "agency" within the meaning of the APA. See 5 U.S.C. §§ 551(1), 552(f)(1).

63. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

64. The APA further empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

65. Pursuant to the APA, certain "rules" promulgated by an agency must be published in accordance with notice-and-comment procedures. 5 U.S.C. § 553.

66. An agency's failure to comply with notice-and-comment procedures is grounds for invalidating the rule.

67. The Byers Rule is a "rule" within the meaning of the APA, defined as the "whole or part of an agency statement of general or particular applicability and future effect designated to implement, interpret, or prescribe law or policy." See 26 U.S.C. § 551(4).

68. The Byers Rule qualifies as "substantive" or "legislative-type" agency rules, which must be subjected to the APA's notice-and-comment regime as a matter of law before being promulgated. See 5 U.S.C. § 553.

69. Before the Byers Rule could take effect, the APA requires the agency to issue a notice of proposed rulemaking that includes "either the terms or substance of the proposed rule or a description of the subjects and issues involved" to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. §§ 553(b)(3), (c).

70. In implementing the Byers Rule, the IRS failed to comply with the APA's notice-and-comment requirements.

71. No potential exceptions to the notice-and-comment requirements apply to Notice 2007-83 as it is neither an "interpretive rule" under 5 U.S.C. §§ 553(b)(A), nor could there be any finding of good cause to bypass such procedural requirements in accordance with 5 U.S.C. §§ 553(b)(B), (d)(3).

72. No exceptions to the Byers Rule apply as the Byers Rule was created in secret through a task force led by Joseph Conroy, an IRS agent.

73. The Byers Rule is neither an "interpretive rule" under 5 U.S.C.§§ 553(b)(A), nor was there any finding of good cause to bypass such procedural requirements in accordance with 5 U.S.C. §§ 553(b)(B), (d)(3).

74. Having failed to comply with the notice-and-comment rulemaking requirements, the Byers Rule was therefore promulgated unlawfully, and Plaintiffs will continue to be adversely affected by Defendant's unlawful conduct, which is reviewable by this Court pursuant to the APA. 5 U.S.C. § 706.

75. Plaintiffs have sustained actual damages that are concrete and particularized in nature due to the additional requirements caused by Defendant's agency actions in promulgating rules in secret without notice and comment and for public scrutiny.

76. Further, Plaintiffs are deprived of the right to provide employee benefits of this type if the Byers Rule is not vacated as unlawful.

## COUNT 2
## ARBITRARY AND CAPRICIOUS ACTION IN VIOLATION OF THE APA

77. Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

78. The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

79. This provision of the APA requires federal agencies to give adequate reasons for their decisions and regulations.

80. If an agency fails to provide a reasoned explanation for its action, that action is arbitrary and capricious and must be set aside.

81. Defendant's conduct in promulgating the Byers Rule was arbitrary, capricious, unsupported by any reasonable basis, and contrary to law.

82. Defendant provided no reason to promulgate the Byers Rule.

83. The Byers Rule was neither a good faith interpretation of the IRC nor intended to establish general regulatory guidance.

84. Instead, the Byers Rule targeted former clients of Byers without regard to the facts of the transaction.

85. The Byers Rule issued a legal and administrative memorandum which included the appointment of Joseph Conroy to oversee the Tax Promoter Investigation.

86. This legal and administrative memorandum was maintained in secret outside the public purview preventing public scrutiny.

87. Therefore, the Byers Rule amounts to an arbitrary and capricious abuse of discretion.

88. Defendant uses the Byers Rule to impose additional reporting requirements, monetary penalties, and criminal penalties for noncompliance.

89. The Byers Rule also conflicts with IRC § 6707A(c)(2) because the Byers Rule does not specifically identify the S-ESOP as a "Listed Transaction."

90. This discrepancy has caused confusion and uncertainty for Plaintiffs and similarly situated taxpayers.

91. The Byers Rule requires vacatur for all similarly situated taxpayers in the marketplace.

92. Plaintiffs have sustained actual damages that are concrete and particularized in nature.

93. Further, Plaintiffs have been deprived of the right to provide employee benefits.

94. Defendants' use of the Byers Rule has harmed, is harming, and will continue to harm Plaintiffs, as well as other similarly situated taxpayers.

## COUNT 3
## DEFENDANT'S FAILURE TO COMPLY WITH 5 U.S.C. § 801(a)(1)(A)

95. Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

96. The Congressional Review of Agency Rule Making Act, 5 U.S.C. § 801, *et seq.*, provided the following: "Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing – (i) a copy of the rule [and additional information]." 5 U.S.C. § 801(a)(1)(A).

97. The Congressional Review of Agency Rule Making Act also provides that "rule" has the meaning provided by the APA. <u>See</u> 5 U.S.C. § 551.

98. The Byers Rule, therefore, constitutes a "rule" within the meaning of the Congressional Review of Agency Rule Making Act.

99. Accordingly, because the Byers Rule was never submitted to House of Congress or any other governing body, the Byers Rule violates the Agency Rule Making Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

a. A determination that the Byers Rule amounts to an unlawful agency rule;

b. A determination that the IRS exceeded its authority when it promulgated the Byers Rule without notice-and-comment;

c. A determination that Defendant's use of the Byers Rule on Plaintiffs, and other former clients of Byers, is arbitrary and capricious;

d. Vacatur of the Byers Rule as an unlawful legislative rule for all similarly situated taxpayers, including established S-ESOPs in the marketplace; and

a. Grant such other and further relief as the Court deems proper.

Dated: August 21, 2024

Respectfully Submitted,
By: */s/ Joseph J. Dadich, Esq.*
Joseph J. Dadich, Esq.
(MI Bar: P63996)
Dadich & Associates, PLLC
Attorney for Plaintiff
604 Banyan Trail
Unit 810907
Boca Raton, FL 33481
josephjdadich@gmail.com
Telephone: (586) 604-9168
Fax: (248) 479-1710

# CERTIFICATE OF SERVICE

This is to certify that on August 21, 2024, a copy of the foregoing Complaint was served on Defendant's counsel electronically and via U.S. Mail to the following address:

Chief Counsel
Internal Revenue Service
Washington, D.C. 20224

Date: August 21, 2024                                    By: */s/ Joseph J. Dadich, Esq.*
                                                         Joseph J. Dadich, Esq. (MI Bar: P63996)