UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFFREY L. DAINES, et al.,

          Plaintiff,

v.                                            Case No. 24-CV-1057

INTERNAL REVENUE SERVICE,

          Defendant.

## DECISION AND ORDER

**1. Background**

Jeffrey and Elisha Daines, Jeffrey and Stephanie Federwitz, Solid Ground Inc., Solid Ground Transportation, Inc., and Solid Ground Transportation Inc. Employee Stock Ownership Plan brought this action alleging that the Internal Revenue Service adopted what they term the "Byers Rule" in violation of the Administrative Procedures Act and the Congressional Review of Agency Rule Making Act, 5 U.S.C. § 801, *et seq*.

In their complaint, the plaintiffs skip over certain basic facts, such as the relationships between the parties. Moreover, the complaint refers to the parties collectively as "Plaintiffs," "Daines" and "Federwitz" even when context or logic suggest that the reference is likely to only one spouse or fewer than all the plaintiffs. Nonetheless, the court can glean that the plaintiffs allege that in 2013, Solid Ground

and Solid Ground Transportation sought to establish an Employee Stock Ownership Plan (ESOP) (ECF No. 1, ¶ 23) and hired Lex J. Byers for assistance (ECF No. 1, ¶ 19); *see also* 26 U.S.C. § 4975(e)(7) (defining an ESOP). Solid Ground Transport became the sponsor of the plan (ECF No. 1, ¶ 28), and one of the Daines became the trustee (ECF No. 1, ¶ 30). Solid Ground Transport wound down the plan at the end of 2022. (ECF No. 1, ¶ 33.)

The plaintiffs allege that Solid Ground Transport was forced to wind down the plan because the IRS adopted new requirements that the plaintiffs refer to as "the Byers Rule." (ECF No. 1, ¶¶ 33, 49-51.) As a result of the IRS's actions, Federwitz received a Notice of Deficiency dated April 18, 2022, imposing a tax assessment of over $15,000 related to his ownership of stock in Solid Ground. (ECF No. 1, ¶ 54.) Daines received a Notice of Deficiency imposing an assessment of over $183,000. (ECF No. 1, ¶ 53.)

The plaintiffs are already challenging the IRS's Notice of Deficiency in a Tax Court action. (ECF No. 1, ¶ 58.) In this action they argue that the adoption of the Byers Rule was arbitrary and capricious, in violation of the APA. Further, they argue that IRS failed to comply with the APA's notice and comment requirements in adopting the Byers Rule. And finally, they claim the Byers Rule violates the Congressional Review of Agency Rule Making Act.

## 2. Motion to Dismiss

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Courts also "draw all reasonable inferences from these facts in favor of the plaintiff." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)

While a plaintiff is not required to plead detailed factual allegations, there must be more than labels and conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that a complaint must provide sufficient facts to raise a right to relief above the speculative level, and mere labels or formulaic recitations are insufficient under Rule 12(b)(6)). Nevertheless, a complaint "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002)).

3. Analysis

   3.1. Administrative Procedures Act

Under the Administrative Procedures Act, a district court may review a "final agency action for which there is no other adequate remedy in a court …." 5 U.S.C. § 704. There are two common categories of actions under the APA—those challenging an agency's rulemaking, *see* 5 U.S.C. § 553, and those challenging an agency's adjudication, *see* 5 U.S.C. § 554; *see also* 5 U.S.C. § 551(5), (7), (13) (defining "rule making," "adjudication," and "agency action"). The plaintiffs challenge only the IRS's alleged rulemaking. They do not contend that the IRS's adjudication was arbitrary or capricious; the IRS's adjudication is the subject of the plaintiffs' contemporaneous Tax Court proceeding.

The plaintiffs purport to challenge the IRS's promulgation of "the Byers Rule." They argue both that the rule is arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A), and that the IRS failed to comply with its obligation to provide notice and the opportunity for comment, *see* 5 U.S.C. §§ 553, 706(2)(D).

The plaintiffs' reference to "the Byers Rule" connotes some sort of formal agency policy or directive. At a minimum, it suggests that the plaintiffs could point to something written that they allege should have been subject to the APA's notice and comment provisions. The plaintiffs reinforce this understanding when they assert that the IRS "formally issued" the Byers Rule. (ECF No. 16 at 14.)

The court has closely read the plaintiffs' complaint and their response to the defendant's motion to dismiss but still does not have a clear sense of what the

4

plaintiffs allege the Byers Rule is. In fact, the plaintiffs have failed to sufficiently demonstrate that what they call the Byers Rule even exists.

In the defendant's view, what the plaintiffs call the Byers Rule is merely the "plaintiffs' impressions of IRS policy and procedure regarding ESOPs the IRS selected for examination in connection with the IRS's broader investigation into potential tax shelter promoter activity." (ECF No. 17 at 2.) It is, again in the IRS's view, "a creation of plaintiffs' speculation and conjecture." (ECF No. 17 at 3.)

The plaintiffs' inference that what they call the Byers Rule exists rests largely on two premises. First, the plaintiffs point to the IRS's response to their request for information under the Freedom of Information Act. (ECF No. 1, ¶ 46.) The IRS withheld certain requested records — documents related to the investigation of the plaintiffs including any IRS Form 211, 211A, 3949A, 11369, 13976 — because disclosure would interfere with enforcement proceedings or tax administration or reveal techniques, procedures, or guidelines for investigations. (*See* ECF No. 1-6.) It appears that the plaintiffs' theory is that those undisclosed documents constitute (or at least contain) what they have taken to calling the Byers Rule. But even that is not clear.

The plaintiffs assert, "The Byers Rule (promulgated in secret) is confirmed by Defendant's letter in response to Plaintiffs' June 2023 FOIA request. A true and correct copy of Defendant's final response to a Freedom of Information Act request is attached hereto as Exhibit 3." (ECF No. 1, ¶ 46.) However, Exhibit 3 (ECF No. 1-6) simply states what the IRS is and is not providing in response to the FOIA request;

5

Case 1:24-cv-01057-BBC    Filed 09/22/25    Page 5 of 11    Document 18

it does not support the inference that the Byers Rule exists much less "confirm" its existence.

Second, the plaintiffs point to the actions that the IRS took with respect to the plaintiffs and again infer that those actions suggest that the Byers Rule exists. They assert that the Byers Rule "created a de facto rule requiring same or substantially similar to 'listed transactions' under Treas. Reg. § 1.6011-4(b)(2) …." (ECF No. 1, ¶ 49.) The Byers Rule "imposed additional reporting obligations that were not otherwise required," including:

- Requiring independent appraisers to "meet the requirements of IRC and Treasury Regulations 1.170(a)(1), 1.170A-(13)(c)(5)(iv), 1.170(f)(11)(E)";

- Treating non-cash contributions as a "donor of property" rather than a sale of stock;

- Requiring an appraiser to provide an EIN;

- Requiring plaintiffs to file a Form 1041;

- Requiring principal loan payments;

- "Eliminating requirements for affiliated service group rules including but not limited to IRC § 414;"

- "Adding requirements under IRC § 401(a) and 54.4975 for who can allocate stock;" and

- "Requiring the plan sponsor to pay off an exempt ESOP loan within one year of adoption."

(ECF No. 1, ¶ 51.)

The plaintiffs may be alleging that these requirements were contained in the Notice of Deficiency that the IRS sent to the plaintiffs on April 18, 2022, and thus that notice constitutes the Byers Rule (*See* ECF No. 16 at 12; *see also* ECF No. 1,

¶¶ 53-54.) But the plaintiffs have not attached the Notice of Deficiency to their complaint or otherwise set forth its contents.

The inferences and suppositions contained in the plaintiffs' complaint are insufficient to adequately demonstrate that what they call "the Byers Rule" exists, much less that it plausibly constitutes a rule under the APA. *Cf.* 5 U.S.C. § 551(4) (defining "rule"). The plaintiffs have not pointed to any case wherein a court recognized a similarly vague collection of agency actions as a rule under the APA, much less a legislative rule subject to the APA's notice and comment requirements. *Cf. Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("Not all 'rules' must be issued through the notice-and-comment process. Section 4(b)(A) of the APA provides that, unless another statute states otherwise, the notice-and-comment requirement 'does not apply' to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.' 5 U. S. C. §553(b)(A)."); *see also Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022) (discussing the distinction between legislative and interpretive rules).

The plaintiffs seem to simply point to the actions that the IRS took against them and call it a rule. (*See, e.g.*, ECF No. 16 at 8 (plaintiffs referring to the Byers Rule as a "targeted enforcement regime").) But while both rulemaking and adjudication may constitute final agency actions under the APA, the APA distinguishes between the two categories of actions. *Compare* 5 U.S.C. § 553 *with* § 554. Again, the plaintiffs present only rulemaking claims under § 553.

The plaintiffs' argument that the IRS was required to provide notice and afford an opportunity for comment because the IRS's enforcement decision involved the interpretation and application of statutory obligations (ECF No. 16 at 10) would stand to transform every enforcement action into a matter of legislative rulemaking. Statutory interpretation and application is, to some degree, an inherent part of every administrative enforcement decision. Such individualized determinations do not constitute rules under the APA. *See Neustar, Inc. v. FCC*, 429 U.S. App. D.C. 168, 177, 857 F.3d 886, 895 (2017).

The plaintiffs' allegations that the IRS has taken similar enforcement actions against others that followed Byers's advice regarding creation and administration of ESOPs does not render those actions a rule. The fact that an agency engaged in even-handed enforcement against similarly situated persons can hardly be considered rulemaking. Here again, the plaintiffs' argument would stand to turn every enforcement action into rulemaking subject to notice and comment. Insofar as what the plaintiffs term the Byers Rule reflects merely the agency's decision to take action against those who followed a particular ESOP strategy, such exercises of discretion are not subject to judicial review. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

In sum, the plaintiffs have failed to adequately allege that there exists anything that could be fairly characterized as the Byers Rule. The plaintiffs' speculation and conjecture as to the existence and role of what they call the Byers Rule does not sufficiently coalesce "to present a story that holds together." *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Insofar as the

allegations in the plaintiffs' complaint suggest the existence of any sort of policy or collection of actions that the plaintiffs characterize as the Byers Rule, these allegations fall short of plausibly alleging the existence of a rule under 5 U.S.C. § 551(4) or that is otherwise subject to judicial review under § 553.

Because the plaintiffs' APA claims fail at the most basic level—plausibly alleging the existence of a rule under the APA—it is both unnecessary and inappropriate for the court to address the defendant's alternative arguments. Without identifying anything that plausibly constitutes a rule under the APA, the court cannot, for example, adequately assess whether all plaintiffs have standing to challenge it (ECF No. 11 at 26-29) or whether they have an adequate remedy in Tax Court (ECF No. 11 at 19-22).

### 3.2. Congressional Review Act

The plaintiffs' claim under the Congressional Review Act (CRA), 5 U.S.C. § 801 et seq., likewise fails because the CRA does not provide for a private cause of action. The plaintiffs incorrectly assert that the Supreme Court held otherwise. (ECF No. 16 at 12 ("Defendant contends that the judicial review provisions of the APA, 5 U.S.C. § 701 et seq., do not extend to the rulemaking process, and that the CRA does not provide a private cause of action. This position, however, is squarely contradicted by *CIC Servs.*, 141 S. Ct. at 1582.").) The Court in *CIC Servs., LLC v. IRS*, 593 U.S. 209, 141 S. Ct. 1582, 209 L.Ed.2d 615 (2021), made no mention of the CRA much less hold that it afforded private litigants with a means for challenging agency actions. To the contrary, the CRA explicitly states, "No determination, finding, action, or omission

under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Thus, the court lacks jurisdiction to consider a challenge to a rule on the ground that it was issued in violation of the CRA. *See, e.g.*, *Montanans for Multiple Use v. Barbouletos*, 386 U.S. App. D.C. 193, 197, 568 F.3d 225, 229 (2009) (Kavanaugh, J.,) ("That latter provision denies courts the power to void rules on the basis of agency noncompliance with the Act. The language of § 805 is unequivocal and precludes review of this claim -- even assuming that the plan amendments qualify as rules subject to the Act in the first place.").

Accordingly, the court will grant the defendants' motion to dismiss the plaintiffs' complaint. However, after granting a motion to dismiss, the court ordinarily must grant a plaintiff a chance to file an amended complaint before dismissing the action. *See NewSpin Sports, Ltd. Liab. Co. v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)). Therefore, the plaintiffs must file any amended complaint within 14 days of the date of this order.

4. Conclusion

**IT IS THEREFORE ORDERED** that the Internal Revenue Service's motion to dismiss (ECF No. 10) is **granted**. The plaintiffs shall file any amended complaint

within **14 days**. If the plaintiffs do not file an amended complaint within 14 days, this action will be dismissed, and the Clerk will enter judgment accordingly.

Dated at Green Bay, Wisconsin this 22nd day of September, 2025.

*s/ Byron B. Conway*  
BYRON B. CONWAY  
United States District Judge