UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| JEFFREY L. & ELISHA A. DAINES, JEFFREY R. & STEPHANIE M. FEDERWITZ, SOLID GROUND INC., SOLID GROUND TRANSPORTATION, INC., SOLID GROUND TRANSPORTATION, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:24-cv-01057-BBC |
| INTERNAL REVENUE SERVICE, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

This lawsuit is an attempt by individuals and entities to challenge an IRS determination that certain employee stock ownership plans ("ESOPs") do not qualify for tax benefits under the internal revenue laws. Plaintiffs seek relief under the Administrative Procedure Act ("APA") to essentially enjoin the IRS from examining retirement plans associated with former clients of Lex J. Byers and disqualifying them from statutory tax benefits. The Court dismissed the plaintiffs' original complaint in this case because "the plaintiffs' APA claims fail at the most basic level—plausibly alleging the existence of a rule under the APA." (Decision and Order, ECF No. 18 at 9.) Rather, the "Byers Rule," as first pleaded, consisted of a "vague collection of agency actions" in its enforcement decisions that did not state a claim under the APA or Congressional Review Act ("CRA"). (*Id.* at 7-9.) The Court permitted the plaintiffs an opportunity to file an amended complaint. But, for the reasons set forth below, the amended complaint fares no better than the original—and should also be dismissed.

First, plaintiffs still have not identified a rule that may be challenged under the APA—the basis for the Court's dismissal of their first complaint. They claim wrongdoing in the IRS examination, disqualification of their ESOP, and the resulting tax deficiencies assessed against them, still urging that they have been singled out by the IRS through application of the "Byers Rule," which they purport to challenge under the APA. Again, however, plaintiffs plead no "statement" by the IRS that would suffice as a rule to be challenged under the APA. Setting aside bare legal conclusions, the factual allegations in the amended complaint still do not demonstrate the existence of an actual rule sufficient to state a claim.

This time around, plaintiffs identify "de facto guidance documents" that consist of "a series of written determinations that constitute final agency action" and, they contend, confirm the existence of the "Byers Rule." (First Amended Complaint, ECF No. 24 ("Am. Compl.") ¶¶ 11, 12. a., b., c & 33.) But these documents do not deliver results to match plaintiffs' fanciful description of the IRS's even-handed enforcement decisions. The documents include an explanation of proposed adjustments prepared by an IRS employee, a request for documents from the IRS, and the letter the IRS sent plaintiffs confirming the disqualification of their ESOP. They are garden-variety IRS documents that accompany nearly every audit the IRS undertakes. As a result, the fundamental problem that plagued plaintiffs' original complaint has not been cured: the plaintiffs point to a series of actions the IRS took against them, and label it a "rule." But they still "have not pointed to any case wherein a court recognized a similarly vague collection of agency actions as a rule under the APA, much less a legislative rule subject to the APA's notice and comment requirements." (Decision and Order, ECF No. 18 at 7.)

Second, plaintiffs' reliance on the APA fails for other reasons. The APA does not waive sovereign immunity where the plaintiff fails to identify a discrete, final agency action to

challenge or where the plaintiff has an adequate remedy in another court. Here, rather than challenging a final agency action, the allegations in the first amended complaint amount to no more than a programmatic attack on the way the IRS enforces its own rules and regulations. Under these circumstances, review under the APA is barred because such decisions fall within the IRS's broad discretion. In short, the IRS itself is fundamentally in the best position to make decisions regarding whether, when, and how to examine the qualifications of ESOPs. In addition, a Tax Court petition or a tax refund suit could provide plaintiffs with an adequate remedy, precluding plaintiffs' APA claims. Indeed, plaintiffs are currently seeking relief before the Tax Court.

Finally, to the extent the amended complaint seeks to prevent the IRS from assessing or collecting taxes, it is barred by the Anti-Injunction Act and the Declaratory Judgment Act.

For all of these reasons, the amended complaint should be dismissed in its entirety.

## BACKGROUND

### Allegations Contained in the Amended Complaint

Plaintiffs allege the IRS has adopted "a de facto legislative rule — referred to herein as the 'Byers Rule' — that unilaterally amends or overrides multiple provisions of the Internal Revenue Code without Congressional authority or notice-and-comment rulemaking." (Am. Compl. ¶ 11.) According to plaintiffs, the Byers Rule imposes "new compliance obligations that make it legally impossible for an entire class of pre-existing S-corporation ESOPs to remain qualified under § 401(a)." (Am. Compl. ¶ 11.) Plaintiffs further assert that the Byers Rule "operates as a substantive rule requiring taxpayers associated with Lex Byers to comply with additional filing and valuation obligations." (Am. Compl. ¶ 28.)

According to plaintiffs, an individual named Lex J. Byers and his business, IFL Capital Group, promotes "proprietary ESOP documentation." (Am. Compl. ¶ 18.) Plaintiffs used these proprietary documents to establish their own plan. (Am. Compl. ¶ 18.) Plaintiffs further allege that, since 1998, the proprietary ESOP that was organized, promoted, and sold by Byers received favorable treatment from the IRS. (Am. Compl. ¶ 19.)

Solid Ground Transportation, Inc. was incorporated in 2010 and the Solid Ground Transportation, Inc. Employee Stock Ownership Plan was subsequently adopted in 2013. (Am. Compl. ¶ 15.) Byers provided the Byers Proprietary ESOP System for use in the adoption of the Solid Ground Transportation, Inc. Employee Stock Ownership Plan. (Am. Compl. ¶ 15.)

According to plaintiffs, in 2016, the IRS Office of Tax Shelter Promoter commenced an investigation of Byers. (Am. Compl. ¶ 21.) Plaintiffs further allege that the IRS created the "Byers Rule," which originated from the Byers Investigation, and "which imposed costly new requirements on Byers-related ESOPs that had not previously existed." (Am. Compl. ¶ 21.) Plaintiffs contend "the IRS has never published the Byers Rule as formal guidance or regulation" but the Byers Rule created "substantive obligations on an entire class of S-corporation ESOPs . . . that override the plain text of the Internal Revenue Code." (Am. Compl. ¶ 33.) According to plaintiffs, "the combined effect of the RAR, IDR #003, and Final Letter created a binding interpretation within the IRS that operates as a substantive rule requiring taxpayers associated with Lex Byers to comply with additional filing and valuation obligations." (Am. Compl. ¶ 28; *see also* ECF No. 24-1 (Exhibit A) (Revenue Agent Report); ECF No. 24-2 (Exhibit B) (Information Document Request); ECF No. 24-3 (Exhibit C) (Final Non-Qualification Letter).)

Plaintiffs Jeffrey L. & Elisha A. Daines and Jeffrey R. & Stephanie M. Federwitz received Notices of Deficiency from the IRS which imposed tax assessments against them. (Am.

Compl. ¶ 27.) In response to their respective Notices of Deficiency, Plaintiffs Jeffrey L. & Elisha A. Daines and Jeffrey R. & Stephanie M. Federwitz filed petitions in the United States Tax Court.[1] (Am. Compl. ¶ 27.) On March 6, 2023, the IRS mailed a final Non-Qualification Letter to Solid Ground Transportation, Inc., determining that the plaintiffs' plan is not a qualified plan. (Am. Compl. ¶ 25.)

The complaint seeks relief pursuant to two counts. In Count I, plaintiffs allege the IRS violated the APA by failing to comply with notice-and-comment procedures when implementing the Byers Rule. (Am. Compl. ¶¶ 38-53.) In Count II, plaintiffs allege the conduct of the IRS in promulgating the Byers Rule was arbitrary and capricious and, thus, a violation of the APA. (Am. Compl. ¶¶ 54-66.)

Invoking this Court's jurisdiction under 28 U.S.C. § 1331, plaintiffs purport to "bring this action pursuant to the Administrative Procedure Act ('APA'), 5 U.S.C. §§ 701–706." (Am. Compl. ¶¶ 7-8.) The complaint asks the Court to grant the following relief: (1) determine that the IRS's adoption and enforcement of the Byers Rule violated the APA; (2) vacate the Byers Rule as an unlawful "legislative-type rule[]promulgated without notice-and-comment;" (3) enjoin the IRS from enforcing the Byers Rule against "Plaintiffs or similarly situated taxpayers[] nationally;" and (4) award costs, fees, and whatever further relief the Court deems proper. (Am. Compl., Prayer for Relief.) Although the CRA is briefly mentioned in plaintiffs' Preliminary

---

[1] The Tax Court cases filed by Jeffrey L. & Elisha A. Daines, Jeffrey R. & Stephanie M. Federwitz, and Solid Ground Transportation, Inc. remain pending and trial in each is scheduled for March 9, 2026. *See Solid Ground Transp., Inc. v. Comm'r,* No. 17357-24 (T.C., filed Nov. 3, 2024); *Federwitz v. Comm'r*, No. 17355-24 (T.C., filed Nov. 3, 2024); *Daines v. Comm'r*, No. 17353-24 (T.C., filed Nov. 3, 2024).

Statement and Count I (*see* Am. Compl., Preliminary Statement & ¶ 51), it is no longer a standalone count of the amended complaint.

**<u>Statutory Scheme</u>**

In 26 U.S.C. § 4975(e)(7), an ESOP is defined as a type of defined contribution plan, either a qualified stock bonus plan or a combination of a stock bonus and money purchase plan, which is primarily designed to invest in employer securities.

For their owners to be eligible for certain federal tax incentives, ESOPs must meet the qualification standards set forth in 26 U.S.C. § 401 and follow the specific requirements prescribed in the applicable Treasury Regulations. For example, according to Treas. Reg. § 1.401-1(a)(2), a qualified plan must be a defined, written program that is clearly communicated to employees and maintained by the employer. Additionally, 26 U.S.C. § 401(a)(28)(C) mandates that valuations of employer securities (not publicly traded) must be performed by an independent appraiser. The regulations further specify the qualifications required of the appraiser and the documentation necessary for the appraisal to be deemed compliant and valid. For example, Treas. Reg. § 1.170A-17(a) provides that a qualified appraisal must be prepared by a qualified appraiser according to generally accepted appraisal standards and must meet certain documentation requirements. A qualified appraisal must include specific information, including the appraiser's "[n]ame, address, and taxpayer identification number." Treas. Reg. § 1.170A-17(a)(3)(iv)(A). The applicable regulations also require that a qualified appraisal include the appraiser's "[q]ualifications to value the type of property being valued, including the appraiser's education and experience." Treas. Reg. § 1.170A-17(a)(3)(iv)(B).

## ARGUMENT

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681. The Court must determine – after excising the allegations not entitled to the presumption of truth – whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. That is, the complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. If the allegations give rise to an "obvious alternative explanation," *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567, then the complaint may "stop[] short of the line between possibility and plausibility of 'entitle[ment] to relief,'" *Twombly*, 550 U.S. at 557. This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT*,

*Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). A "plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

## I. THE COURT SHOULD DISMISS PLAINTIFFS' AMENDED COMPLAINT BECAUSE THEY FAIL TO ALLEGE A RULE UNDER WHICH THERE IS PLAUSIBLE ENTITLEMENT TO RELIEF UNDER THE APA.

Because the plaintiffs still do not allege sufficient facts to establish that the so-called "Byers Rule" is a rule subject to review under the APA such that they are plausibly entitled to relief, each of their two counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In both counts of their amended complaint, plaintiffs purport to raise causes of action under the APA to challenge what they characterize as "the Byers Rule," which is described as a "de facto legislative rule," never published by the IRS, but allegedly confirmed by the "RAR, IDR #003, and Final Letter" which "constitute the consummation of the agency's decision-making process and have binding legal effect." (Am. Compl. ¶¶ 11, 33, 43.) In Count I, they allege that the IRS failed to comply with the APA's notice-and-comment requirements when it implemented the so-called Byers Rule, in violation of 5 U.S.C. § 553. (Am. Compl. ¶¶ 38-53.) In Count II, plaintiffs contend that the "IRS's adoption and enforcement of the Byers Rule was arbitrary, capricious, and contrary to law," violating § 706(2)(A) of the APA. (Am. Compl. ¶¶ 54-66.) Both counts should be dismissed for failure to state a claim for relief.

Although the Court must assume the veracity of well-pleaded factual allegations at this procedural juncture, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court must determine whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* at 681. "If the allegations give rise to

an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (alterations, citations, and quotation marks omitted). The greater the complexity of the claim, the higher the level of factual specificity required in the pleading. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

The IRS is required to promulgate rules in accordance with the procedural requirements of the APA, including publishing notice of any proposed rules to invite comment from those persons who are likely to be regulated by the rules the agency seeks to adopt. *See* 5 U.S.C. § 553(b) & (c). "The definition of 'rule' as set forth in 5 U.S.C. § 551(4) has three distinct elements: (1) it is the whole or part of any agency statement; (2) of general or particular applicability and future effect; (3) designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." *Abbs v. Sullivan*, 756 F. Supp. 1172, 1187 (W.D. Wis. 1990), *vacated on other grounds*, 963 F.2d 918 (7th Cir. 1992). However, an agency's "individualized determination" of a fact-specific issue on a case-by-case basis, that applies existing legal authority and is "not intended to impact law or policy," is not a "rule" within this definition. *Neustar, Inc. v. FCC*, 857 F.3d 886, 894-895 (D.C. Cir. 2017); *see also Rost v. United States*, 44 F.4th 294, 303-04 (5th Cir. 2022). As this Court has explained, "[s]tatutory interpretation and application is, to some degree, an inherent part of every administrative enforcement decision. Such individualized determinations do not constitute rules under the APA." (Decision and Order, ECF No. 18 at 8 (citing *Neustar*, 857 F.3d at 895).)

Although a plaintiff may state a claim by challenging an unwritten ***policy*** under 5 U.S.C. § 706,[2] a plaintiff still must plausibly show the existence of the policy that she asks a court to invalidate to avoid dismissal under Rule 12(b)(6). *See, e.g.*, *id.* at 8-9 (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (the policy or collection of actions that the plaintiffs characterized as the Byers Rule did not "sufficiently coalesce 'to present a story that holds together'"); *see also Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp.3d 1284, 1319 (S.D. Cal. 2018). To be clear, a plaintiff must identify an actual source of his or her alleged injury to bring a challenge under the APA. *Lujan v. Natl. Wildlife Fedn*., 497 U.S. 871, 890 (1990); *see also ONRC Action v. Bureau of Land Mgt*., 150 F.3d 1132, 1136 (9th Cir. 1998). That is because, "[w]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, [a court] may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020).

Here, the plaintiffs again fail to plausibly allege the existence of a rule that may be invalidated under the APA, and therefore their amended complaint should be dismissed under Rule 12(b)(6). In their amended complaint, plaintiffs argue that the existence of the unwritten "Byers Rule" is confirmed by three documents: (1) a Revenue Agent Report, issued by the IRS to Solid Ground Transportation, Inc., providing an initial determination that the plaintiffs' ESOP "is not qualified in operation under IRC Section 401(a) and the Trust is no longer exempt under IRC section 501(a)" (ECF No. 24-1 (Exhibit A)); (2) an Information Document Request, issued

---

2 Plaintiffs do not purport to challenge a specific final agency action under Section 706 of the APA, but instead only challenge the manner of implementing and promulgating the *de facto* "Byers Rule." In any case, as discussed below, plaintiffs fail to establish that there was a "final agency action" that permits subject matter jurisdiction to review the IRS's conduct under 5 U.S.C. § 706.

by the IRS to Solid Ground Transportation, Inc., seeking "Form 1041 for plan years 2018, 2019, 2020 and 2021" (ECF No. 24-2 (Exhibit B)); and (3) a Final Non-Qualification Letter, issued by the IRS to Solid Ground Transportation, Inc., providing a determination that "the Plan is not qualified under I.R.C. § 401(a) and the Plan's trust is not exempt from taxation under I.R.C. § 50l(a)." (ECF No. 24-3 (Exhibit C); *see also*, *e.g.*, Am. Compl. ¶ 67 ("The IRS's issuance and enforcement of the Byers Rule, through the RAR, IDR #003, and Final Non-Qualification Letter . . . constitute unlawful rulemaking under the APA.").) But these documents – taken together or analyzed individually – do not constitute or evidence a "statement" by the IRS that would suffice as a rule to be challenged under the APA. (*See* Decision and Order, ECF No. 18 at 8-9.)

***First***, plaintiffs' reliance on Exhibit A – the Revenue Agent Report – is unavailing. A Revenue Agent Report, also known as IRS Form 886-A (Explanation of Items), provides a taxpayer with an individualized, detailed explanation of adjustments made during an audit; the purpose of the form is to ensure taxpayers understand the Government's position and the reasons behind proposed adjustments. *E.g.*, *United States v. Rum*, 995 F.3d 882, 894 (11th Cir. 2021) (Form 886-A "explains both the factual and legal basis for imposing the penalty" and "sets out the relevant statutes and regulations and sets forth extensively the factual basis on which" the IRS relied); *Laidlaw's Harley Davidson Sales, Inc. v. Comm'r*, 29 F.4th 1066, 1069 (9th Cir. 2022) (a Form 886-A "explain[s] the basis for the proposed penalty" and identifies the Government's position and administrative enforcement decision); *Estate of Streightoff v. Comm'r*, 954 F.3d 713, 721 (5th Cir. 2020) (Form 886-A explains "the reasoning for the deficiency").

Here, Exhibit A reveals that the IRS provided Solid Ground Transportation, Inc. with an individualized and fulsome explanation of the IRS's proposed treatment of the company's ESOP

under the relevant statutes and regulations. In fact, the Revenue Agent invited questions and responses to the explanatory document. (*See* Exhibit A, ECF No. 24-1 at 1 ("[p]lease provide any responses to the Revenue Agent Report after your review" and "if you have any questions, please contact me").) Exhibit A goes on to identify four issues related to the tax treatment of the ESOP, sets forth background information, and applies the relevant law to the facts. Contrary to plaintiffs' suggestion, this is hardly a document exhibiting an IRS rule that "unilaterally amends or overrides multiple provisions of the Internal Revenue Code without Congressional authority or notice-and-comment rulemaking." (Am. Compl. ¶ 11.) Exhibit A does not support plaintiffs' speculation that the IRS created and applied a rule that may be challenged under the APA; rather, the "plaintiffs seem to simply point to the actions that the IRS took against them and call it a rule." (Decision and Order, ECF No. 18 at 7.) "Such individualized determinations do not constitute rules under the APA." (*Id.* at 8 (citing *Neustar*, 857 F.3d at 895).)

***Second***, plaintiffs argue that Exhibit B – the Information Document Request – provides the necessary basis to infer the existence of the Byers Rule. It does not. Pursuant to 26 U.S.C. § 7601(a) and 7602, Congress has provided the IRS with broad information gathering authority. IRS Form 4564 (Information Document Request) "may be issued by the IRS to a taxpayer to request the production of documents specified by the requesting IRS agent." *Worsham v. U.S. Dep't of the Treas*., 2013 WL 5274358, at *3 (D. Md. Sept. 17, 2013). In this instance, the IRS requested that Solid Ground Transportation, Inc. provide trust and estate income tax returns "for plan years 2018, 2019, 2020 and 2021." (Exhibit B, ECF No. 24-2 at 2.) The reason was simple: if the ESOP were no longer entitled to tax-exempt status, "the earnings that the Trust assets' realized are taxable each year the plan is not qualified." (Exhibit B, ECF No. 24-2 at 2.) Tax returns were thus required to be submitted. Plaintiffs, on the other hand, describe this benign

request as "particularly coercive," "threaten[ing] criminal penalties," and "designed to pressure taxpayer in never-before-seen compliance absent APA-compliant rulemaking." (Am. Compl. ¶ 23.) It is true that willful failure to file income tax returns is a crime, but administrative rulemaking is hardly required on that point or reflected by the IRS's investigation. The Internal Revenue Code is the product of bicameral lawmaking. As to the rest, the "plaintiffs' argument that the IRS was required to provide notice and afford an opportunity for comment because the IRS's enforcement decision involved the interpretation and application of statutory obligations . . . would stand to transform every enforcement action into a matter of legislative rulemaking." (Decision and Order, ECF No. 18 at 8.)

***Third***, plaintiffs point to Exhibit C – the Final Non-Qualification Letter – as proof of the existence of a rule. This letter informed Solid Ground Transportation, Inc. of the IRS's final determination that the company's ESOP "does not meet the requirements of Internal Revenue Code (IRC) Section 40l(a)" and the "trust is not tax-exempt under IRC Section 501 (a)." (Exhibit C, ECF No. 24-3 at 2.) As this letter merely concludes what Exhibit A proposed, it is no more evidence of the existence of the Byers Rule than Exhibit A is – and should be rejected for the same reasons.

Plaintiffs argue that, because this letter "conclusively determine[es] the Plan's status, while imposing immediate legal consequences" "it satisfies the definition of a final agency action under 5 U.S.C. § 704." (Am. Compl. ¶ 25.) Of course, plaintiffs' argument that the IRS's conduct was "final agency action" still does not allege any "statement" of general or particular applicability and future effect that would suffice as a rule to be challenged under the APA. In any case, plaintiffs misunderstand the meaning of "final agency action" for purposes of the APA. At most, the plaintiffs allege that the IRS made the individualized determination of a fact-specific

issue – whether their retirement plans are qualified plans under section 401(a) of the Internal Revenue Code – on a case-by-case basis, applying existing legal authority, and that is not intended to impact law or policy. That is not a "final rule" for purposes of the APA.

While plaintiffs primarily rely on Exhibits A, B, and C to demonstrate the existence of the Byers Rule, they attached additional material to their amended pleading. But none of it immunizes the amended complaint from dismissal under Rule 12(b)(6). For starters, plaintiffs attached three internal documents from Solid Ground Transportation, Inc. – a stock purchase agreement (Exhibit H, ECF No. 24-8), a ledger (Exhibit J, ECF No. 24-10), and a line of credit agreement (Exhibit K, ECF No. 24-11). Plainly, documents ***created by*** Solid Ground Transportation, Inc. cannot constitute or reflect a final agency rule of general applicability. Moreover, and not surprisingly, this hodgepodge of internal documents does not set forth any rule, as alleged by plaintiffs, "that effectively eliminates long-available statutory exemptions and imposes new compliance obligations" with respect to 26 U.SC. § 401(a). (Am. Compl. ¶ 11.)

Plaintiffs also attach a stipulation, from 2012, filed in a separate Tax Court case (Exhibit I, ECF No. 24-9) and the first page of the Notice of Deficiency directed to plaintiffs Jeffrey L. & Elisha A. Daines (Exhibit E, ECF No. 24-5). According to plaintiffs, the stipulation is proof that the IRS "publicly proclaimed [Byers] ESOP loans were compliant" back in 2012. (Am. Compl. ¶ 17(vii).) Aside from the fact that the exhibit itself says no such thing, and only refers to concessions made by the IRS as to unidentified issues, stipulations in Tax Court are voluntary agreements between a particular taxpayer and IRS Chief Counsel, and cannot be used as precedent in any other proceeding. *See* Tax Court Rule 91(e) ("A stipulation and the admissions therein are binding and have effect only in the pending case and not for any other purpose, and cannot be used against any of the parties thereto in any other case or proceeding"). The Notice of

Deficiency document, which at least is a document created by the IRS, is also no help to plaintiffs. It is evidence that, because of the IRS decision to disqualify plaintiffs' ESOP, the plaintiffs owed additional tax and penalty. It is an individualized determination that does nothing to demonstrate what plaintiffs call the Byers Rule actually exists.[3]

In sum, the amended complaint, and the exhibits attached to it, fail to demonstrate the existence of an actual rule that may be challenged for failure to comply with the APA's notice-and-comment requirements (Count I) or that was promulgated in a manner that was "arbitrary, capricious, unsupported by any reasonable basis, and contrary to law" (Count II). Plaintiffs therefore have entirely failed to allege sufficient facts to establish beyond a speculative level that the "Byers Rule" actually exists or that the IRS acted in an unlawful manner in promulgating it. Plaintiffs' factual allegations simply do not create a plausible inference that the IRS engaged in misconduct for which relief under the APA is available. In other words, as in their first complaint, plaintiffs' amended factual allegations do not "give enough details about the subject-matter of the case to present a story that holds together" such that they could prevail under the causes of action they assert. *McCauley*, 671 F.3d at 616-17.

*****

Plaintiffs' two causes of action fail to state a claim under Rule 12(b)(6) for other reasons. For example, the judicial review permitted by the APA in 5 U.S.C. § 701, *et seq.*, to invalidate final agency action that is arbitrary, capricious, unsupported by any reasonable basis, or contrary

---

[3] Lastly, three of the exhibits attached to the amended complaint – Exhibits D, F, and G – were also attached to the original complaint (*see* Exhibit 2, ECF No. 1-5; Exhibit 3, ECF No. 1-6; Exhibit 4, ECF No. 1-7) and have already been deemed by the Court to be insufficient to "adequately allege that there exists anything that could be fairly characterized as the Byers Rule." (Decision and Order, ECF No. 18 at 8.)

to law, does not facially apply to the rulemaking process. But Count II of the amended complaint only seeks to challenge the IRS's "adoption and enforcement of the Byers Rule" as "arbitrary, capricious, and contrary to law." (Am. Compl. ¶ 65.)

In addition, the plaintiffs fail to plead sufficient facts to show that the so-called "Byers Rule" – even if it were a rule – must be issued through notice-and-comment procedures, the basis for Count I of the amended complaint. "Not all 'rules' must be issued through the notice-and-comment process." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015); *see also* Decision and Order, ECF No. 18 at 7 ("The plaintiffs have not pointed to any case wherein a court recognized a similarly vague collection of agency actions as a rule under the APA, much less a legislative rule subject to the APA's notice and comment requirements."). For example, "the notice-and-comment requirement 'does not apply' to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Id.* (citing 5 U.S.C. § 553(b)(A)). The "Byers Rule," as pleaded, simply reflects plaintiffs' impression of IRS policy or procedure with respect to ESOPs selected for examination in connection with its broader investigation into potential tax shelter promoter activity. The "Byers Rule" – if it were a rule at all – thus would be interpretive and notice and comment are not required. *Perez,* 575 U.S. at 96; *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022); *Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 240-41 (5th Cir. 2023).

Nor are plaintiffs' allegations sufficient to establish a "*de facto*" rule or binding norm that requires formal notice and comment rule making. *See Ctr. for Auto Safety v. Natl. Hwy. Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006) ("In order to sustain their position, appellants must show that the 1998 policy guidelines either (1) reflect 'final agency action,' 5 U.S.C. § 704, or (2) constitute a *de facto* rule or binding norm that could not properly be promulgated absent

the notice-and-comment rulemaking required by § 553 of the APA."). The rule plaintiffs allege – to the extent that it is a statement at all – would be "nothing more than [a] general policy statement[] with no legal force." *Id.* at 808. Any such "rule" does not "determine any rights or obligations," nor does it "have any legal consequences" and, thus, it cannot "otherwise be seen to constitute a binding legal norm." *Id.* At bottom, the "rule" pleaded in plaintiffs' amended complaint remains nothing more than plaintiffs' interpretation of the IRS's view of the legality of plaintiffs' ESOP. So plaintiffs certainly do not allege sufficient facts to establish that the "Byers Rule" is subject to notice-and-comment, or must be promulgated in a certain manner.

In summary, the plaintiffs have failed to plausibly allege facts sufficient to establish the existence of an IRS rule or any wrongdoing by the IRS related to the so-called "Byers Rule" that is actionable under the section 553 of the APA (Count I) or section 706(2)(A) of the APA (Count II). Accordingly, the amended complaint should be dismissed in its entirety under Rule 12(b)(6).

## II. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' APA CLAIMS.

The plaintiffs do not directly contest the audits conducted by the IRS, the individualized determinations made because of those audits, the IRS's determination that their plan is not qualified, or the notices of deficiency issued to plaintiffs Daines and Federwitz that currently are before the Tax Court. They disclaim an intention to restrain the assessment and collection of tax and profess to challenge only the failure of the IRS to abide by notice-and-comment requirements and fault the enactment of the Byers Rule as "procedurally unlawful and substantively arbitrary and capricious." (Am. Compl. ¶¶ 14, 69.) However, the plaintiffs seek a declaration that the application of the so-called "Byers Rule" is unlawful under the APA as arbitrary and capricious and an order that would enjoin the IRS from assessing and collecting accuracy-related penalties on underpayments "against plaintiffs or similarly situated taxpayers[]

nationally." (Am. Compl. ¶ 14 & Prayer for Relief.) The Court does not have jurisdiction under the APA to provide any such relief and therefore the amended complaint should be dismissed under Rule 12(b)(1).

### A. The Conduct Challenged Here Is Not Final Agency Action, As Required By The APA.

First, the plaintiffs apparently seek to enjoin the IRS from various conduct in investigating their retirement plan transactions and those of "similarly situated taxpayers"—essentially asking the Court to categorically prohibit the IRS from imposing reporting and other requirements, and assessing and collecting taxes and penalties under the Tax Code. But this challenge is not proper under the APA and the Court is without jurisdiction to consider it.

#### 1. Broad programmatic challenges to the IRS's regular and continuing operations are not reviewable under the APA.

As the Supreme Court has explained, the APA's "limitations rule out several kinds of challenges" including "broad programmatic attack[s]" of the type at issue here. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The APA does not permit, for example, judicial review of an agency's regular and continuing operations under the guise of "final agency action." *Lujan v. Natl. Wildlife Fedn.*, 497 U.S. 871, 890 (1990). In *Natl. Wildlife Fedn.*, the Supreme Court rejected a challenge to the Bureau of Land Management's "land withdrawal review program." *Id*. at 892-93. According to the Supreme Court, the program was not an "agency action," much less a "final agency action" subject to APA review. *Id.* at 890-91. Instead, the plaintiffs there sought to challenge the continuing operations of the Bureau of Land Management in reviewing withdrawal revocations and the classifications of public lands and developing land use plans. *Id.* at 890. Rejecting that attempt, the Supreme Court explained:

> [R]espondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress,

> where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular "agency action" that causes it harm.

*Id.* at 891 (emphasis in original).

Likewise, in *Norton v. S. Utah Wilderness All.*, the Supreme Court explained that the APA's limitations on judicial review are intended "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." 542 U.S. at 66. "If courts were empowered to enter general orders compelling compliance with broad statutory mandates," "it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Id.* at 66-67.

The same is true here. Plaintiffs' challenge to the so-called "Byers Rule" does not seek to "hold unlawful and set aside agency action, findings, and conclusions[.]" 5 U.S.C. § 706(2). The amended complaint instead aims to enjoin the IRS from application of the so-called Byers Rule "or any equivalent unpublished directive against Plaintiffs or similarly situated taxpayers[] nationally." (Am. Compl., Prayer for Relief at ¶ C.) It is thus akin to the broad programmatic challenges that are barred by the Supreme Court's precedent in *Natl. Wildlife Fedn.* and *Norton*. Plaintiffs essentially ask the judicial branch to inject itself into the day-to-day management of future IRS examinations regarding the qualification of particular ESOPs as defined under 26 U.S.C. § 401(a). Such an invocation of the APA is not permitted.

The IRS examination process that the plaintiffs seek to inhibit is a function replete with discretion. The examinations require a constant exercise of judgment – and are clearly not the type of discrete, ministerial, and required actions that are remediable under the APA. In their

amended complaint, plaintiffs make programmatic challenges to prevent application of alleged policies that purportedly add "additional filing and valuation obligations," disclosure requirements, mandates for principal payments and repayments, and criminal penalties. (*E.g.*, Am. Compl. ¶¶ 28, 33.) Such a challenge is not permitted under the APA because it does not target a discrete agency action. Accordingly, the Court is without jurisdiction to grant it.

**2. Under *Bennett v. Spear*, the challenged conduct cannot be viewed as "final agency action."**

Second, plaintiffs' request for injunctive relief seeks broadly to enjoin future conduct, not "hold unlawful and set aside" a "final agency action" under the APA. To avoid the jurisdictional bar of the Anti-Injunction Act, plaintiffs claim that they "do not seek to restrain tax assessment or collection but challenge the validity of the agency's rulemaking process, a procedural claim within this Court's jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702." (Am. Compl. ¶ 69.) But any so-called "rule" here does not constitute "final agency action," and, as described further below, the Court does not have jurisdiction under the APA to remedy "the concrete injuries, including loss of plan qualification, forced termination of benefits, compelled new filings, and increased compliance costs" that plaintiffs allegedly suffered. (*Id.* ¶ 70.)

The APA authorizes suit only by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. "Agency action" is defined in the APA to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In a proper APA claim, only "[a]gency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). For example, courts may not review APA claims "where 'an agency merely expresses its view of what the law requires of a party, even if

that view is adverse to the party.'" *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (quoting *AT & T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001)); *see also Community Fin. Services Assn. of Am., Ltd. v. Fed. Deposit Ins. Corp.*, 132 F. Supp. 3d 98, 119 (D.D.C. 2015) ("It is not readily apparent how the amorphous *de facto* rule against payday lenders alleged by Plaintiffs is the consummation of the [FDIC] decision-making processes"). "Finality is, therefore, a necessary precondition to [the Court's] ability to review agency action under the APA." *Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018).

But – to the extent their causes of action go beyond contesting the promulgation of the so-called "Byers Rule"[4] – any conduct challenged here is not "final agency action[.]" *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). In *Bennett*, the Supreme Court decided that an agency action is final if it satisfies two conditions. First, it must "mark the 'consummation' of the agency's decisionmaking process," rather than being tentative or interlocutory. *Id.* Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178. Notably, plaintiffs make no non-conclusory factual allegations regarding either of these conditions. This is likely because they cannot, under any set of facts, establish either condition for final agency action given the broad, prospective relief they seek.

The challenged action, at least as set forth in the amended complaint, is the IRS's future application of the federal tax law regime governing the qualification of ESOPs to the plaintiffs, other clients of Byers, and similarly situated taxpayers. The action plaintiffs seek to enjoin is

---

[4] Again, the two counts pleaded in the plaintiffs' amended complaint appear to relate only to notice-and-comment (Count I) and the allegedly arbitrary and capricious ***promulgation*** of the so-called "Byers Rule" (Count II).

nothing more than the straightforward consideration of retirement plan transactions in light of regulatory and statutory requirements set forth in 26 U.S.C. § 401(a) and related Treasury regulations. These sources provide a basis for the IRS's decision-making process in the context of an examination of the validity of a given ESOP, and do not themselves consummate the IRS's decision-making with respect to any particular examination, or any other IRS action.

The IRS's decision-making processes related to the examination of an ESOP ends when the IRS arrives at a final determination regarding any related adjustments on a taxpayer's tax returns. In other words, the consummation of the decision-making process is the issuance of the notices of deficiency (which, for the Daines and Federwitz plaintiffs, already are being contested before the Tax Court). It is only at that point that rights and obligations associated with the examination become fixed. The steps that lead up to that point are intermediate in nature, including the actions that plaintiffs seek to enjoin here, *i.e.*, the way the IRS investigates and audits an ESOP. As intermediary steps leading up to the notice of deficiency, the challenged actions are not "final" actions subject to judicial review. Thus, the absence of final agency action is yet another ground for dismissal of plaintiffs' APA claim. *See Bennett*, 520 U.S. at 178 (action was final because it "alter[ed] the legal regime to which the action agency is subject").

In sum, as the Court explained when considering plaintiffs' first complaint, "[i]nsofar as what the plaintiffs term the Byers Rule reflects merely the agency's decision to take action against those who followed a particular ESOP strategy, such exercises of discretion are not subject to judicial review." (Decision and Order, ECF No. 18 at 8.)

### B. The Court Lacks Jurisdiction Over Plaintiffs' APA Claims Because They Have An Adequate Remedy In Another Court.

To the extent that plaintiffs rely on the APA to challenge and invalidate the IRS's conduct as it relates to the SGTI ESOP, its qualification, and their own tax liabilities, the Court

lacks jurisdiction. A trial court has subject matter jurisdiction over an APA claim only if "there is no other adequate remedy in a court." 5 U.S.C. § 704. As the Supreme Court has noted, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).

Here, taxpayers may challenge their tax obligations, including any penalties imposed, through a petition in the Tax Court or, after assessment of taxes and full payment, in a federal refund suit under 26 U.S.C. § 7422. And Congress has provided a mechanism to challenge ESOP disqualification in Tax Court under 26 U.S.C. § 7476(a). *Ed Thielking, Inc. v. Comm'r*, T.C. Memo 2020-5, 2020 WL 108413, at *3 (T.C. Jan. 9, 2020) ("Section 7476(a) authorizes this Court to render a declaratory judgment relating to the qualification of a retirement plan, subject to the limitations in section 7476(b)."). Each of these avenues provides a "special and adequate review procedure" to dispute the assessment of taxes and penalties, precluding APA review.[5] *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005) (citing *Bowen*, 487 U.S. at 903). *See also Bratcher v. Comm'r*, 116 F.3d 1482 (7th Cir. 1997) ("The APA is irrelevant, however, because the IRS's issuance of a notice of tax deficiency and the Tax Court's review of it are governed by the Internal Revenue Code and the rules and procedures of the Tax Court, *see* 26 U.S.C. §§ 6212-14, 7442, 7453, and not by the APA.");

The thrust of plaintiffs' grievance – IRS "actions caused immediate financial harm by disqualifying the Plan and increasing tax exposure" (Am. Compl. ¶ 27) – is the result of proposed assessments of tax and penalties made by the IRS following an audit of the Daines and

---

[5] A federal court has no jurisdiction to consider a pre-payment challenge to the validity of the IRS's notice of deficiency. *See Flora v. United States*, 362 U.S. 145, 163 (1960).

Federwitz plaintiffs and the IRS's disqualification of the ESOP. On March 6, 2023, the IRS found that the SGTI ESOP is not qualified beginning with the plan year ended December 31, 2018. (Am. Compl. ¶ 25.) Notices of deficiency were sent to Jeffrey L. and Elisha A. Daines and Jeffrey R. and Stephanie M. Federwitz proposing the assessment of taxes and penalties. (Am. Compl. ¶ 27.) Each Notice of Deficiency advised plaintiffs of the imposition of additional tax and penalties and states that plaintiffs have "90 days from the date of this letter (150 days if addressed to you outside of the United States) to file a petition with the United States Tax Court." (Exhibit E, ECF No. 24-5.)

In short, there plainly exist adequate remedies and mechanisms for relief. In fact, all plaintiffs are currently taking advantage of them.[6] (Am. Compl. ¶ 27 ("Plaintiffs subsequently filed Petitions in the United States Tax Court.").) *See also Solid Ground Transp., Inc. v. Comm'r*, No. 17357-24 (T.C., filed Nov. 3, 2024); *Solid Ground Transp. Inc., et al. v. Comm'r.*, No. 8843-23R (T.C., filed June 3, 2023); *Federwitz v. Comm'r*, No. 17355-24 (T.C., filed Nov. 3, 2024); *Federwitz v. Comm'r*, No. 15840-22 (T.C., filed July 17, 2022); *Daines v. Comm'r*, No. 17353-24 (T.C., filed Nov. 3, 2024); *Daines v. Comm'r*, No. 18235-22 (T.C., filed July 17, 2022).

Plaintiffs allege in their complaint that Tax Court "proceedings, limited to deficiency issues, do not provide an adequate forum for APA review." (Am. Compl. ¶ 27.) Not so.

---

[6] The plaintiffs' claims also should be dismissed because they are not permitted to file multiple, and duplicative, suits in both district court and Tax Court to challenge the same disputed issues. *See Flora*, 362 U.S. at 163 (in our system, "there is one tribunal for prepayment litigation and another for post-payment litigation, with no room contemplated for a hybrid of the type proposed by petitioner"); *see also Tracy v. United States*, 226 F. Supp. 708, 709 (S.D. Cal. 1963) ("It seems to me, not only from the tax statutes, but from the *Flora* case as well, that Congress intended that all tax questions for any one taxable year should be included in one litigation.").

Adherence to the "existing procedures for review of agency action," *Bowen*, 487 U.S. at 903, *i.e.*, a federal refund suit under 26 U.S.C. § 7422 after full payment, provides a forum where the APA's judicial review provisions apply. *See also South Carolina v. Regan,* 465 U.S. 367, 374-76 (1984) (interpreting past cases as viewing the availability of refund suits as an adequate legal remedy); *Bob Jones Univ. v. Simon,* 416 U.S. 725, 746 (1974) (finding that refund suits provide a "full, albeit delayed, opportunity to litigate" tax issues); *Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018) (taxpayer not entitled to APA review of the assessment of Section 6707 penalties because taxpayer had an adequate remedy in the form of a tax refund suit). Thus, these allegations do not overcome the jurisdictional bar of 5 U.S.C. § 704.

In sum, plaintiffs may not challenge the proposed assessments of tax and penalties made by the IRS and the IRS's disqualification of their ESOP in this Court because they have another – and all are taking advantage of another – adequate remedy. *See* 5 U.S.C. § 704 (exempting from review an agency action for which there is an "adequate remedy in a court"). Because a Tax Court petition or a tax refund suit could provide plaintiffs the relief requested,[7] another adequate remedy exists, precluding plaintiffs' APA claims. As a result, the Court must dismiss plaintiffs' APA claims pursuant to Fed. R. Civ. P. 12(b)(1).

## III. THE ANTI-INJUNCTION ACT AND THE DECLARATORY JUDGMENT ACT PROHIBIT THIS ACTION.

This Court also lacks jurisdiction to the extent that the plaintiffs seek to thwart the collection of the taxes currently being litigated in the Tax Court (Am. Compl. ¶ 27), or to prevent

---

[7] A plaintiff's failure to comply with the tax refund scheme does not render that remedy inadequate or confer jurisdiction on a district court to conduct APA review. *See Barber v. United States*, 2019 WL 3841996, at *6 (D. Md. Aug. 15, 2019).

the IRS from assessing and collecting taxes and penalties from "similarly situated taxpayers[] nationally." (Am. Compl., Prayer for Relief at ¶ C.)

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421. Likewise, the tax exception to the Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking" a declaration "except with respect to Federal taxes." 28 U.S.C. § 2201. The Declaratory Judgment Act's tax exception is "at least as broad" as the Anti-Injunction Act. *Bob Jones*, 416 U.S. at 732-33 n.7. Together, these provisions protect "the Government's ability to collect a consistent stream of revenue" by requiring taxpayers to fully pay their liabilities before challenging them in District Court. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012); *see also Bob Jones*, 416 U.S. at 736-37 (Anti-Injunction Act focuses on "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, and to require that the legal right to the disputed sums be determined in a suit for refund") (internal quotes omitted).[8]

To determine whether the plaintiffs' suit is "for the purpose of restraining the assessment or collection" of tax, and thus barred under the Anti-Injunction Act, the Court should "inquire not into a taxpayer's subjective motive, but into the action's objective aim – essentially, the relief

---

[8] These Acts are similar in operation, and if the Anti-Injunction Act bars relief, declaratory relief under the Declaratory Judgment Act also is unavailable. *See Florida Bankers Ass'n v. U.S. Dep't of Treasury*, 799 F.3d 1065, 1067 (D.C. Cir. 2015); *Cohen v. United States*, 650 F.3d 717, 727-31 (D.C. Cir. 2011) (en banc); *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995).

the suit requests." *CIC Services, LLC v. IRS*, 593 U.S. 209, 217 (2021). As the Supreme Court explains, the Anti-Injunction Act "kicks in when the target of a requested injunction is a tax obligation – or stated in the Act's language, when that injunction runs against the 'collection or assessment of [a] tax.'" *Id.* at 218. Courts have made clear that the Anti-Injunction Act precludes them from enjoining activities that are related to, or may culminate in, assessment or collection: "'To hold otherwise would enable ingenious counsel to so frame complaints as to frustrate the policy or purpose behind the Anti-Injunction Statute.'" *Tollerson v. Comm'r*, 1993 WL 174884, at *5 (S.D. Tex. 1993) (quoting *Blech v. United States*, 595 F.2d 462, 466 (9th Cir. 1979)).

The equitable relief sought here – essentially a declaratory judgment that the Byers ESOP is "a qualified plan [] under section 401(a)" of the Internal Revenue Code and thus confers tax advantages to its owners (Am. Compl. ¶¶ 25, 27) – plainly would restrain the assessment or collection of taxes. Indeed, as noted above, the thrust of plaintiffs' grievance – IRS "actions caused immediate financial harm by disqualifying the Plan and increasing tax exposure" (Am. Compl. ¶ 27) – is the result of adjustments made by the IRS following an audit of plaintiffs' ESOP. Plaintiffs acknowledge receipt of "Notices of Deficiency" "asserting an increase in tax . . . and penalties" under 26 U.S.C. § 6662. (*See* Am. Compl. ¶¶ 25, 27.) The plaintiffs' action seeks injunctive relief that "runs against," *i.e.*, restrains, the assessment and collection of the tax "assessments" referred to in the "Notices of Deficiency" they received, and based on the IRS's determination that plaintiffs' ESOP "is not a qualified plan [] under section 401(a)" of the internal revenue law. (*See* Am. Compl. ¶¶ 25, 27.)

Based on their allegations that the IRS violated the APA when it "declar[ed] that the Plan 'is not qualified under I.R.C. § 401(a)'" (Am. Compl. ¶ 25.) they seek to contest the IRS's tax assessments and any collection of those assessments. Because this action seeks injunctive relief

against the assessment and collection of a tax, it falls squarely within the Anti-Injunction Act's prohibition. *See Bob Jones*, 416 U.S. at 732 ("[A] suit seeking [injunctive] relief" against a tax "falls squarely within the literal scope of the Act").

Considering the Court in *CIC Services, LLC v. IRS*, 593 U.S. 209 (2021) ultimately found that the Anti-Injunction Act's prohibition did not apply in that action, the plaintiffs may argue that *CIC Services* compels the same result here. They would be wrong. In *CIC Services*, the plaintiff, a "material advisor," sued to enjoin the reporting requirements for material advisors with respect to micro-captive insurance transactions, which IRS Notice 2016-66 identifies as reportable transactions. The plaintiff in that case did not target the tax penalty that applies when a "material advisor" fails to comply with the requirement. In fact, the material advisor in *CIC Services* did not face tax penalties for violating the reporting requirements: it brought suit before it was required to report anything, and the suit thus focused solely on the reporting requirements themselves. The present suit is entirely different. Plaintiffs here have been through the IRS examination process, a Notice of Deficiency has issued, and their ESOP has been disqualified. Here, unlike *CIC Services*, plaintiffs target the assessment and collection of personal income tax, based on IRS audit and deficiency procedures. At bottom, the APA claim in this case was brought in response to an existing tax obligation, distinguishing it from the claim in *CIC Services*.

Finally, because plaintiffs have adequate legal remedies available, *see* Section II.B., *supra*, limited judicial exceptions to the Anti-Injunction Act do not apply to them. Under one exception, a court may grant a preenforcement injunction only if there are no circumstances whatsoever under which the government might ultimately prevail and if equity jurisdiction otherwise exists. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). Under

another, the plaintiff may proceed where there is no other means of litigating its claims. *South Carolina v. Regan*, 365 U.S. 367 (1984). Neither of these exceptions apply, given the legal remedies available to plaintiffs. Accordingly, the Anti-Injunction Act bars jurisdiction here.

**CONCLUSION**

For all of the foregoing reasons, the amended complaint should be dismissed in its entirety.

Dated: January 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General
Tax Litigation Branch

s/ *Richard G. Rose*
RICHARD G. ROSE
District of Columbia Bar No. 493454
Trial Attorney
Civil Division
Tax Litigation Branch
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C. 20044
(202) 616-2032
richard.g.rose@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I caused a true and correct copy of the foregoing to be electronically filed, which will send notification of such filings to all registered CM/ECF participants.

*/s/ Richard G. Rose*
RICHARD G. ROSE
Trial Attorney